## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADOMNI, INC., <br><br>                 Plaintiff, <br><br> vs. <br><br> CLEARTRUST MEDIA, LLC, and CT MEDIA, LLC, <br><br>         Defendants. | Civil Action No.: 1:23-cv-10338 <br><br> Civil Action <br><br> **ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND FIRST AMENDED COUNTERCLAIM** |

Defendants CT Media, LLC and ClearTrust Media, LLC ("CTM") (or collectively referred to as "Defendants"), through the undersigned counsel of record, responds to the First Amended Complaint of Plaintiff, Adomni, Inc. (hereinafter "Plaintiff" or "Adomni") by way of Answer and Affirmative Defenses as follows:

### AS TO THE PARTIES

1.     Defendants have insufficient information to form a belief as to the allegations contained in Paragraph 1 of the First Amended Complaint and, as such, no response is required to be interposed thereto and Defendants leave Adomni to its proofs.

2.     CTM admits that it is a Wyoming Limited Liability Company engaged in media management services.  Defendants deny all other allegations in Paragraph 2 of the First Amended Complaint.

3.     CTM admits the allegations in Paragraph 3 of the First Amended Complaint.

## AS TO NATURE OF PROCEEDING

4.      The allegations contained in Paragraph 4 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them and leave Adomni to its proofs.

## AS TO JURISDICTION AND VENUE

5.      The allegations contained in Paragraph 5 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them and leaves Adomni to its proofs.

## AS TO FACTS

**Nature of Adomni's Business and Importance of Proprietary Customer Information**

6.      Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 6 of the First Amended Complaint, and as such, denies same and leaves Adomni to its proofs.

7.      The allegations contained in Paragraph 7 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

8.      The allegations contained in Paragraph 8 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

9.      The allegations contained in Paragraph 9 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

**Adomni's Prior Relationships with Van Blarcom and Grella**

10.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 10 of the First Amended Complaint, and as such, deny same as stated and leave Adomni to its proofs.

11.     The allegations contained in Paragraph 11 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

12.     The allegations contained in Paragraph 12 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

13.     The allegations contained in Paragraph 13 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

14.     The allegations contained in Paragraph 14 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

15.     The allegations contained in Paragraph 15 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

16.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 16 of the First Amended Complaint, and as such, deny same as stated and leave Adomni to its proofs.

17.     The allegations contained in Paragraph 17 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

18.     The allegations contained in Paragraph 18 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

19.     The allegations contained in Paragraph 19 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

20.     The allegations contained in Paragraph 20 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

21.     On information and belief, Defendants admit the allegations contained in Paragraph 21 of the First Amended Complaint.

**Adomni's Relationship with CTM**

22.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 22 of the First Amended Complaint, and as such, deny same and leave Adomni to its proofs.

23.     The allegations contained in Paragraph 23 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

24.     The allegations contained in Paragraph 24 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the

extent these allegations are deemed factual in nature, Defendants deny them as stated as the referenced MSA speaks for itself.

25.    The allegations contained in Paragraph 25 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated as the referenced MSA speaks for itself.

26.    The allegations contained in Paragraph 26 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated as the referenced MSA speaks for itself.

27.    The allegations contained in Paragraph 27 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated as the referenced insertion order speaks for itself.

28.    The allegations contained in Paragraph 28 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

29.    The allegations contained in Paragraph 29 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

30.    The allegations contained in Paragraph 30 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

31.    The allegations contained in Paragraph 31 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

32.    The allegations contained in Paragraph 32 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

33.    The allegations contained in Paragraph 33 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

34.    The allegations contained in Paragraph 34 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

35.    The allegations contained in Paragraph 35 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

**Van Blarcom's and Grella's Breaches of Their Agreement with Adomni and CTM's Misappropriation of Adomni's Trade Secrets**

36.    Defendants admit the allegations contained in Paragraph 36 of the First Amended Complaint.

37.    The allegations contained in Paragraph 37 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

38.     The allegations contained in Paragraph 38 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

39.     The allegations contained in Paragraph 39 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

40.     The allegations contained in Paragraph 40 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

41.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 41 of the First Amended Complaint, and as such, deny same as stated and leave Adomni to its proofs.

42.     The allegations contained in Paragraph 42 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

43.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 43 of the First Amended Complaint, and as such, deny same as stated and leave Adomni to its proofs.

44.     The allegations contained in Paragraph 44 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

45.     The allegations contained in Paragraph 45 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

46.     The allegations contained in Paragraph 46 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

47.     The allegations contained in Paragraph 47 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

48.     The allegations contained in Paragraph 48 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

49.     The allegations contained in Paragraph 49 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

50.     The allegations contained in Paragraph 50 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

51.     The allegations contained in Paragraph 51 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

<u>**COUNT I**</u>
**(Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)**

52.     Defendants repeat, reiterate and reallege each and every allegation contained in the preceding Paragraphs as if set forth more fully at length herein.

53.     The allegations contained in Paragraph 53 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

54.     The allegations contained in Paragraph 54 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

55.     The allegations contained in Paragraph 55 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

56.     The allegations contained in Paragraph 56 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

57.     The allegations contained in Paragraph 57 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

58.     The allegations contained in Paragraph 58 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

59.     The allegations contained in Paragraph 59 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

60.     The allegations contained in Paragraph 60 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

61.     The allegations contained in Paragraph 61 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

## <u>COUNT II</u>
**(Nevada Uniform Trade Secrets Act, Nev. Rev. Stat. § 600A.010 *et seq.*)**

62.     Defendants repeat, reiterate and reallege each and every allegation contained in the preceding Paragraphs as if set forth more fully at length herein.

63.     The allegations contained in Paragraph 63 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

64.     The allegations contained in Paragraph 64 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

65.     The allegations contained in Paragraph 65 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

66.     The allegations contained in Paragraph 66 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

<u>**COUNT III**</u>
**(Tortious Interference with Contract)**

67.     Defendants repeat, reiterate and reallege each and every allegation contained in the preceding Paragraphs as if set forth more fully at length herein.

68.     The allegations contained in Paragraph 68 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

69.     The allegations contained in Paragraph 69 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

70.     The allegations contained in Paragraph 70 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

71.     The allegations contained in Paragraph 71 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

72.     The allegations contained in Paragraph 72 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

73.      The allegations contained in Paragraph 73 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

<strong><u>COUNT IV</u></strong><br><strong>(Breach of Contract)</strong>

74.      Defendants repeat, reiterate and reallege each and every allegation contained in the preceding Paragraphs as if set forth more fully at length herein.

75.      Defendants admit the allegations contained in Paragraph 75 of the First Amended Complaint.

76.      The allegations contained in Paragraph 76 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

77.      The allegations contained in Paragraph 77 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

78.      The allegations contained in Paragraph 78 of the First Amended Complaint constitute a statement of law and, as such, no response is required to be interposed thereto.  To the extent these allegations are deemed factual in nature, Defendants deny them as stated.

**WHEREFORE,** Defendants demand judgment against Adomni on all counts of the First Amended Complaint, the dismissal of the Complaint with prejudice and the award of attorneys' fees and costs.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The relief sought by Adomni is barred by the doctrines of estoppel, ratification, laches and waiver.

### THIRD AFFIRMATIVE DEFENSE

The relief sought by Adomni is barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

If Adomni sustained any damages as alleged in the First Amended Complaint, which is expressly denied, then such damages were caused, either in whole or in part, by Adomni or the actions of third-parties over whom Defendants had no control.

### FIFTH AFFIRMATIVE DEFENSE

Adomni is barred from recovering by virtue of its failure to mitigate damages.

### SIXTH AFFIRMATIVE DEFENSE

The amount of recovery to which Adomni is entitled, if any, must be reduced by any amounts recovered by Adomni from collateral sources—including but not limited to any recovery Adomni obtains in its actions against Steven Van Blarcom and Lawrence Grella in District Court, Clark County, Nevada.

### SEVENTH AFFIRMATIVE DEFENSE

Adomni's claims are barred as a direct and proximate result of its failure to abide by the terms and conditions of any agreements between the parties.

## EIGHTH AFFIRMATIVE DEFENSE

Adomni's claims are barred by its failure to perform under the agreements between the parties (specifically, but not limited to, the reasons set out in CTM's Amended Counterclaim).

## NINTH SEPARATE DEFENSE

Adomni's claims are barred by its failure to act with good faith and fair dealing as implied by the terms and conditions of any agreements between the parties.

## TENTH SEPARATE DEFENSE

Adomni's claims are barred by fraudulent conduct and tortious interference.

## ELEVENTH SEPARATE DEFENSE

Adomni has not suffered any damages as a result of any action by Defendants.

## TWELFTH SEPARATE DEFENSE

Adomni is barred from any recovery because it breached the Media Services Agreement.

## THIRTEENTH SEPARATE DEFENSE

Defendants did not improperly acquire, use, or disclose any of Adomni's alleged proprietary information.

## FOURTEENTH SEPARATE DEFENSE

Adomni's claims are barred by CTM's Counterclaims asserted in this action.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend its Answer and Affirmative Defenses in the course of this litigation based on such other and further defenses which future investigation reveals to be appropriate.

## FIRST AMENDED COUNTERCLAIM

Defendant/Counterclaimant, ClearTrust Media, LLC (hereinafter "CTM"), through the undersigned counsel of record, by way of Counterclaim against Adomni, Inc. (hereinafter "Adomni") says as follows:

## THE PARTIES

1.      CTM is a limited liability company existing under the laws of Wyoming and maintains its principal place of business at 30 N. Gould St., Suite 12737, Sheridan, Wyoming 82801.

2.      On information and belief, Adomni is a corporation existing under the laws of Delaware with its principal place of business located at 7120 Rafael Ridge Way, Las Vegas, Nevada 89119.

## FACTS COMMON TO ALL COUNTS

### CTM and Adomni Enter the Media Services Agreement

3.      CTM is a media managed services organization that is engaged in the planning and purchasing of advertising space for its clients.

4.      CTM utilizes sophisticated audience-lead planning technology, programmatic tools, and industry-leading expertise to deliver its clients preferential (low) pricing due to its proprietary relationships in the industry.

5.      Adomni is a demand side platform/technology company that provides, among other things, services related to enabling organizations (like CTM) to buy advertising space on digital out-of-home screens.

6.      In March 2023, CTM and Adomni discussed entering a business relationship wherein CTM would utilize Adomni's platform on behalf of its clients to secure advertising

inventory at CTM's preferred pricing.

7.      CTM, however, was unwilling to enter Adomni's proposed Media Services Agreement because it provided Adomni wide latitude to terminate the agreement on short notice—potentially leaving CTM (and CTM's clients) in a compromised position of lacking  access to Adomni's platform to complete ongoing ad campaigns without sufficient notice to secure an alternative platform.

8.      To address this concern, Adomni agreed to either party providing the other with ninety (90) days' notice prior to terminating the Media Services Agreement "for any reason."

9.      In reliance on this representation reflected in the Media Services Agreement, CTM agreed to contract with Adomni and the parties executed the Media Services Agreement on April 7, 2023 (the "MSA").

**CTM and Adomni's Relationship**

10.      Under the MSA, Adomni, among other things, was to make available its platform for CTM to purchase advertising inventory on digital out-of-home screens on behalf of CTM's clients at CTM's preferred pricing or Private Market Pricing (the "PMPs").

11.      Adomni was to further provide services to CTM to assist it in planning, structuring, and managing the reporting for ad campaigns run by CTM on behalf of its clients.

12.      CTM runs ad campaigns on behalf of its clients by receiving an "Insertion Order" or email request (i.e. a Buy-Order) from the client's "Agency of Record."

13.      The Insertion Order is a document that contains the details and parameters of a client's advertising campaign.

14.      In turn, CTM would provide the campaign details from the Insertion Order to Adomni.

15.     CTM would also provide Adomni with its PMPs (CTM's PMPs were a critical part of the sale to the CTM client).

16.     Adomni would then coordinate a plan for the campaign based on CTM's guidance.

17.     CTM would further communicate via email the campaign details to its supplier sources and utilize its expertise to further secure the best inventory availability at the best prices for its clients.

18.     Adomni would plan the campaign incorporating CTM's inventory availability and PMPs and provide CTM a plan to submit to CTM's client and its Agency of Record.

19.     Once a client's Agency of Record approved a plan, CTM would give the "green light" to Adomni to start executing the client's ad campaign.

20.     Adomni would not have direct contact with CTM's client or the client's Agency of Record.

21.     While the campaign was running, at the end of the campaign and post-campaign (as required by CTM clients for reconciliation), Adomni would provide CTM updates and reports for CTM to share with its client and its Agency of Record.

22.     All communications with CTM's clients and the Agency of Record were handled exclusively by CTM.

23.     Given that these campaigns were multi-month campaigns, at the end of each month, Adomni would bill CTM for its services and the media cost associated with the month in question, and in turn, CTM would bill the client's Agency of Record.

24.     At the end of the campaign, the parties would true up the bills and adjust for discrepancies.

25.     Once the Agency of Record collected from the client, the Agency of Record would

remit payment to CTM and CTM would remit any payment due to Adomni.

26.    CTM engaged Adomni in relation to two campaigns in 2023, the "Hershey Campaign" and the "State Farm Campaign."

## Adomni Interferes with CTM's Client Relationship On The State Farm Campaign

27.    In relation to the State Farm Campaign, in April 2023, CTM received an Insertion Order from State Farm and its Agency of Record (Butler/Till, Inc. ("Butler Till")) to run an $824,091.00 campaign.

28.    CTM's potential upside from State Farm's business was $4,000,000 to $8,000,000 per year.

29.    CTM retained Adomni pursuant to the parties' MSA to provide its services in conjunction with the State Farm Campaign.

30.    Consistent with prior dealings, CTM communicated the State Farm Campaign details to its supplier sources who secured best pricing for the inventory targeted by the campaign.

31.    Adomni planned the State Farm Campaign incorporating CTM's PMPs and provided CTM with a "plan" to submit to State Farm and Butler Till.

32.    CTM submitted the State Farm Campaign plan and Butler Till, on State Farm's behalf, approved the plan.

33.    CTM then communicated via email to Adomni to start the campaign.

34.    Adomni managed the State Farm Campaign, outcomes and reporting and provided documentation of such to CTM, who in turn shared those with State Farm and Butler Till.

35.    Importantly, it was only CTM maintaining communication with Butler Till and State Farm in relation to the State Farm Campaign.

36.    Upon completion of the deliverables for the parts of the State Farm Campaign that

ran in May and June 2023, Adomni billed CTM for its services and for the media cost for those two months.

37.    CTM subsequently billed Butler Till.

38.    As referenced, typically, Butler Till would then bill State Farm and once Butler Till collected from State Farm, it would pay CTM and CTM would then pay Adomni.

39.    That was not the case here.   In a departure from the parties' practice on past campaigns, Adomni reached out directly to State Farm and Butler Till seeking to solicit State Farm to engage Adomni directly and terminate its relationship with CTM.

40.    Adomni was aware of CTM's contractual relationships with State Farm and Butler Till.

41.    To illustrate, in July 2023, Butler Till authorized additional spend and incremental campaigns that CTM would have benefited from given its billing arrangement on the Campaign.

42.    CTM notified Adomni of the potential for this additional spending.

43.    In early August 2023, Butler Till pulled an "about-face" and notified CTM that it had been "in contact" with Adomni and was going to work directly with Adomni and proceeded to reject all of CTM's invoices.

44.    Adomni then proceeded to bill Butler Till directly for the work performed by CTM, inclusive of CTM's PMPs.

45.    Adomni got paid by Butler Till and State Farm for CTM's services and Adomni, Butler Till and State Farm benefited from CTM's PMPs.

46.    Furthermore, Adomni never informed CTM that it had received payment for the services and PMPs provided by CTM.

47.    Butler Till's "about-face" was in direct response to communications from Adomni in

or around July 21, 2023 wherein Adomni unilaterally contacted Butler Till with the intent of interfering with Butler Till and CTM's business relationship for Adomni's sole benefit.

48.     As a result of Adomni's improper interference with CTM's business relationship with Butler Till, (a) Adomni deprived CTM of at least $122,530 in revenue (CTM's fee of 15% of the $816,867.26 in ad billings) due to invoices improperly paid to Adomni at Adomni's request, and (b) CTM's loss of a business relationship wherein it expected to realize profits of over 15% of gross billings amounts between $816,867.26 and $1,436,965.73 (the total amount billed by Adomni to Butler Till for State Farm) for the calendar year of 2023 and loss of revenue for an ongoing book of business in the amount of $4,000,000 to $8,000,000 per year.

49.     All losses are attributable to Adomni's actions.

50.     CTM is also aware of multiple other instances of Adomni seeking to contact CTM's clients in efforts to divert their services away from CTM and to retain Adomni directly to CTM's detriment.

**Adomni Breaches The MSA By Prematurely Discontinuing CTM's Access To The Adomni Platform**

51.      In addition to Adomni's tortious conduct in relation to the State Farm Campaign, Adomni breached its own MSA in relation to the Hershey Campaign.

52.     CTM retained Adomni in relation to the Hershey Campaign in or around May 2023 after receiving an Insertion Order from The Hershey Company's ("Hershey") Agency of Record, Horizon Media.

53.     While the Hershey Campaign was ongoing, Adomni terminated the MSA with CTM on July 21, 2023.

54.     Adomni's termination was effective ninety (90) days after its correspondence under the MSA as confirmed by its own termination notice which stated "Adomni hereby provides notice

to CT Media [CTM] of its intention to terminate the Media Services Agreement effective in 90 days from the date of this correspondence."

55.    Despite Adomni's correspondence and obligation to continue providing services (including permitting CTM to access its platform) under the MSA for ninety (90) days after noticing the MSA's termination, Adomni immediately terminated CTM's access to its platform and ceased providing services.

56.    Adomni's premature termination of CTM's access is violative of its MSA, and moreover, undisputed as confirmed by an August 4, 2023 email from its President Jonathan Gudai.

57.    As a result of Adomni's actions, CTM was unable to deliver Horizon (the Agency of Record for the Hershey Campaign) information as required—which it would have delivered if it retained access to the Adomni platform as promised under the MSA.

58.    CTM's inability to complete its services to Horizon Media resulted in Horizon Media terminating its relationship with CTM causing CTM additional damages in excess of $750,000.

59.    Adomni's actions have and will continue to cause CTM damage.

## COUNT ONE

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

60.    CTM repeats and realleges each and every preceding allegation as if set forth fully herein.

61.    There were valid and existing contracts between CTM, State Farm, and Butler Till.

62.    Adomni knew of the valid and existing contracts between CTM, State Farm, and Butler Till.

63.    Notwithstanding, Adomni interfered with CTM's contractual relationships by

contacting State Farm and Butler Till and inducing State Farm and Butler Till to terminate their relationship(s) with CTM, refuse to pay CTM, and contract with Adomni at CTM's detriment.

64.     As a result of Adomni's improper interference with CTM's contractual relationships, CTM's contracts with State Farm and Butler Till were breached and terminated.

65.     CTM has and will continue to be damaged by Adomni's wrongful and improper interference.

## COUNT TWO

## BREACH OF CONTRACT

66.     CTM repeats and realleges each and every preceding allegation as if set forth fully herein.

67.     The MSA is a valid and enforceable contract.

68.     CTM performed all material obligations under the MSA.

69.     Adomni breached the MSA by, *inter alia*, failing to provide services (including access to its platform) for ninety (90) days after noticing the MSA's termination.

70.     As a result of Adomni's breaches of the MSA, CTM suffered damages including, but not limited to, its loss of the Horizon Media account worth over $750,000 per year.

## COUNT THREE

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

71.     CTM repeats and realleges each and every preceding allegation as if set forth fully herein.

72.     The MSA is a valid and enforceable contract.

73.     There is, in each agreement, an implied covenant of good faith and fair dealing.

74.     Adomni had a duty to act in good faith toward CTM to, among other things, honor

the obligation to continue to provide services (including access to its platform) for ninety (90) days after noticing the MSA's termination.

75.    Adomni, without excuse or justification, refused to provide CTM its services after terminating the MSA on ninety (90) days' notice.

76.    Adomni has acted in bad faith and with bad motive and intention to deprive CTM of the benefit of its bargain under the MSA.

77.    Thus, Adomni has breached the implied covenant of good faith and fair dealing inherent in the MSA.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, CTM demands judgment against Adomni as follows:

1)  Directing Adomni to cease interfering with CTM's contractual relationships;

2)  Awarding compensatory damages;

3)  Awarding consequential damages

4)  Awarding interest;

5)  Awarding attorneys' fees and costs of suit; and

6)  Awarding such additional relief as this Court deems equitable and just.

**OLENDERFELDMAN LLP**
*Attorneys for Defendants*

By: ***/s/ Howard A. Matalon***
  Howard A. Matalon, Esq. (HM5503)
  Sean Rose (SR5338900)
  OLENDERFELDMAN LLP
  641 Lexington Avenue; 13th Floor,
  New York, NY 10022
  (908) 964-2424
  hmatalon@olenderfeldman.com
  srose@olenderfeldman.com

Dated: June 14, 2024